Good morning, Your Honors. I'm Suzanne Luban. I represent Willis Randolph, and I'd like to reserve three minutes for rebuttal. So the panel, the prior panel who had this case in its published decision, remanded for the determination of two issues of fact, whether when my client recited information to Ronnie Moore that he then conveyed to the government officials, and whether he elicited that information. Counsel, doesn't everything rise or fall on whether the factual findings that have happened after the remand are supported by substantial evidence, and in particular the finding that Moore offered this material before, I forget the dates, in August, that he, the date on which he first met with the prosecuting agents? Your Honor, the August 17th is the key date. Right. August 17th is the date that Ronnie Moore presents his letter to the man standing in for his public defender, and that attorney conflicts the PD's office off the case, provides the cases turned over to whoever happens to be in the courtroom. Let me just go back to my problem here. Doesn't all your arguments depend on whether that factual finding is correct? Yes. Okay. Yes, Your Honor, it does. And so if the factual finding is supported by evidence in the record, then you lose, right? No, Your Honor. That's not the case. That would be our position, and the evidence supports this, is that although at first glance when the appellate court had the case first, when your court had the case first before another panel, they found that there was substantial evidence to support either theory, that there was evidence. Well, okay. That was then and this is now. Yeah. I mean, I have the same problem in the sense if you had won below, I would say you would win here. If they won below, they win here, because you have two plausible. There's conflicts in the evidence, and a district judge went through all of it and said, and you presented one way it could have happened, they presented one way, another way it could have happened, and could have decided either way. But based on credibility, based on other temporal circumstances about when, you know, when he went to court, when he was in certain housing blocks, you know, when the letter was presented, when the conflict occurred, all of those things, the district judge ruled against you. It seems to me that anyone that lost down there, whether it had been the prosecutor or whether it had been the defense, would have an up, they'd be pushing a rock uphill, because that's exactly what, that's exactly the type of deference we give to factual findings. The district judge was there, we're here. However, this Court has to look at the basis for those findings and determine whether they were clear error, whether they are supported. But if we already held that both possibilities were plausible, which was the reason for the remand, how do you expect us now to say, after there's even more evidence, that one of them has become not plausible? All of the evidence that was introduced supported the Petitioner's position. Well, how can you say that? Okay. That, I mean, how can you say all of the evidence, because you actually have testimony from a district attorney, you have testimony from an officer that doesn't support it. What I'm saying is that the new evidence that came in basically invalidated that evidence. For example, so the district attorney. Well, okay. But there's a difference between arguments. It's like making a sufficiency of the evidence argument. You can argue the evidence that you like, or, but we have to look at all the evidence. And what you just said was all of the evidence can only go one way. And I've just pointed out two people that didn't testify your way. Now, you can argue that you impeached them and all of those things, but that's not the same as all of the evidence goes one way. But the reason the magistrate judge – I'm just going to quickly go through the reasons the judge, which were adopted by the district court, that the judge gave for his findings. And each one of those reasons is invalid. The first one he says is there's no evidence before 1997 that Ronnie Moore says he met with the DA and the investigator before the August 24th date. However, it's clearly stated that Ronnie Moore in the November 6th interview that he gives with the public defender's investigator, he says he learned about the information after the hung jury. That has to be after he's put back in the cell after this August 17th meeting. So he says that in 1989, and then in the current, you know, the deposition and the first evidentiary hearing, he testifies at length about that. When he was asked specific questions, when did you speak to him? And very specifically, when was that and where were you? He's cagey in that interview. He is cagey in the trial. He says he doesn't remember the conversation. And so there are no specific pieces of information that contradict this. And yet he says in that November 6th interview that he learned it after the hung jury. He also has said that he learned it during jury selection, but we know that can't be true because he wasn't even in the cell with Randolph during jury selection in his first trial. So then the magistrate goes on to say also that Moore was uncertain whether his meeting was taped or not and that that's a reason to disbelieve him. Well, the DA also made that same error. He believed that the meeting was taped also. And the DA also believed he attended the meeting on the 29th of August, which he wasn't present at, which was taped. So that is a minor fact, a minor error that both of these two people made. But the magistrate judge determined that he would believe the DA over Mr. Moore solely based on that error. And then the magistrate judge says, well, he is claiming a failure of memory when he says that he doesn't recall in the 2000 evidentiary hearing whether my client actually admitted that he did the crime. And if you read carefully, and I ask you to read that portion carefully, he is apologizing in a sense, and he had testified during the deposition, that basically he lied and that he said that because he was trying to please the prosecutor. But by saying that he doesn't remember and, therefore, he didn't say it, he's trying to avoid a perjury conviction. I think it's readily apparent from the testimony. So that's not a basis for not believing him. If you go back to the trial when asked about it. It's a basis. It's not just a good reason from your perspective. And that's where we're getting into the dispute here. This seems to me to be a case that you win or lose when you're fighting out the factual disputes and you lost here. And it's really hard for us to second-guess those. Well, I hear you, but I want to also point out that the magistrate judge disregarded basically almost all of the new evidence that came in. And so I just want to, turning toward the jail records and the information about, from the experts about what's proper jail policy and what's contrary to classification and security procedures, moving Ronnie Moore back into that cell was contrary to classification procedures because he had had a fight in that cell. There's no explanation why the bed in that cell was kept empty. Well, I think I read something that they said. There was a witness that was called that said, yeah, that's a good idea, but it's not required. Am I misrecollecting the record? I believe that there was a female correctional officer that testified. And Gage said something different than what you're saying right here. She speculated that there would be – that there were reasons because of race segregation in the jail. However, there were other black defendants. You can call her testimony speculation, but she testified, didn't she, that she said it's not – she used some word. Policy was one of the words, but then there was another word that she used. Practice or procedures. Okay. She and – there was another individual from there also. They all testified that it's not appropriate, that it's not proper, and that it's – that they didn't say, yes, forbidden. But they – she gave explanations that were ad hoc about the racial placement. And Mr. Moore could have been replaced on the floor of another cell, and another black inmate could have been brought in, which is what our experts testified would have been the appropriate thing to do, not to reward a troublemaker. In addition, we've got the gap in Mr. Martinez's log. So he's a detective. He's keeping a log of the case, and there's a mysterious 24-day gap. So we took his deposition, and his explanations were obvious lies, I believe. They were disproven. He testified that it was really a log of his overtime, but then he admitted that he kept a separate record of overtime. He testified that he may have been on vacation. That is really impossible, that the second-to-lead investigator on a death penalty murder case would schedule a vacation, and he admitted he had to get approval in advance for a vacation. Why is your argument here different than the argument you made at the district court? You sound like you're in the district court right now. Well, Your Honor, I'm evaluating the findings of the district court. Did you make all these arguments in the district court? Is that why the district court was – all the arguments you're making to us, are those the reasons you asked the district court to believe your side of the story? Well, Your Honor, yes. I mean, I made those arguments there, and I'm making additional arguments here with regard to the findings of the district court and how those are not supported, how they're contrary to the facts that we introduced in both the first – in the 2000 hearing and then later in the whatever it was, 2006 hearing. And so the judge disregarded the testimony of the experts and just went back to the testimony of the district attorney, which the district attorney admits he doesn't remember. He doesn't know when, as the first panel found, he had no idea. He was only relying on the report of his investigator for that date. And if you look closely at the report of the investigator, it does not contain numerous important facts, which the DA says happened at his first meeting with Mr. Moore. He says that he left the room. He says that in trial, actually, that he left the room. That's not in the report. He says that he talked about how Mr. Moore did not have – you know, wasn't getting any promises from him and that that was the way that Mr. Obliger sought to avoid a Messiah claim. He said that he may have given him the listening post speech, which Mr. Moore testified about, and so it's obvious that he was given in that speech. That's not in the very detailed report. All right. In terms of the standard of review here, what do you have to show in order to prevail? I have to show that the district court's factual findings are clear error, which does not mean that there's some support for them so they win. I believe that's where Your Honor is going with that, that as long as – as if it's a sufficiency of the evidence test, it's not that test. If it's even, do you win? If it's even, well, I have to show preponderance of the evidence. No. Clear error means that the district court has to be affirmed unless it was illogical, implausible, or there were no inferences that could reasonably be taken from the record to support it. That's our Hinkson test. To support a finding that there was not a preponderance of the evidence in support of the Petitioners. I know that sounds convoluted. No. I had to prove that. This is – this is – I had the same frustration that Judge Bey is expressing because we have a very recent case which reiterates the principle that if a plausible finding can be made either way, then one of the – the finding either way is not clearly erroneous. That's – I think Hinkson is the spelling of that case. But it's not a new principle from Hinkson. It's just a – if there are two ways to look at the evidence, the district court picks one, and they're both plausible, then the district court's choice is not clear error. That's what our law says, so. And I'm arguing to this Court that the district court's findings were not plausible, and I have outlined in my brief specifically why as to each one of the reasons given by the district court. Well, pardon me. Let me just ask you just a couple of questions. You agree, I think both parties agree, that whatever Moore heard from Randolph, he heard it before August 24th, right? That would be correct, yes. Right. So then the next question is, is when did Moore first meet Opliger and Chavez? Right. And there's evidence from Opliger and Chavez that the first time they met was August 24th. They don't remember. It's not in the report. The report does not say this is the first time they're meeting him. It goes to circumstantial evidence, which you urge impeaches their testimony. But their testimony was the first time we met him was August 24th at this hearing. Right? Your Honor, they don't remember the date. They clearly testified they don't remember when it was. The first time they met him was at this hearing. That hearing took place August 24th. Well, there's a hearing, the same exact kind of hearing, a trial confirmation hearing exactly the week before in the same department before the same judge. And so when they say we came and talked to him at trial confirmation hearing, they remember that. They don't remember what date it was. They don't remember. How is it tied to when the conflict occurred? The conflict occurs on the 17th. Ronnie Moore gives the letter. The public defender talks to his supervisor. They declare a conflict in the court. And Mr. Nielsen is not present. By the way, Mr. Nielsen's testimony in his deposition, it was new and was quite important because he talks about what happened at that meeting, how when he walked into that meeting, it was all set up. He was tapped on the shoulder and told to come. And they were already there, you know, right after he had basically talked to his client and learned that his client even wanted to talk to the government. But Moore's confirmation hearing of August 17th was continued because he claimed the conflict. So if Opliger and Chavez met Moore at a confirmation hearing, it was the confirmation hearing on August 24th. If you look at the docket sheet, it lists both of them there. Paul, the trial confirmation hearing, he was not the lawyer on the case. He did not stand up in court. You could find either way. What you can't tell us is that no reasonable person could find the first time they met him was August 24th. That's not the standard, Your Honor, that no reasonable person could find that. That's my position. And the judge doesn't say that because they said it was that date, that's the basis for his finding. The magistrate judge acknowledged that they did not remember. They had no independent knowledge even of how many meetings there were, but whether they are basing it on the report that was prepared by Chavez. And that's what Opliger said. That's what he admitted. Thank you, counsel. You've exceeded your time. Thank you. You've argued diligently. We really appreciate that. We'll hear now from Ms. McLean. Janice Shank-McLean, the Attorney General's Office, on behalf of the Warden. The magistrate judge in this case has sat through two evidentiary hearings. We've had the last one on this particular issue. It was three days. He did a careful review of the record of the evidence that was presented and found not only that we were – it was a close call, but he found that the great weight of evidence established that the first meeting occurred on August 24th, and at that point, Ronnie Moore knew all of the information that was disclosed at that meeting. He found the evidence of Moore, Moore's testimony, to be the only evidence contradictory to the August 24th meeting. And as to Moore's testimony of an earlier meeting, he found that contradictory and equivocal. The reason that he found that is because in 1989, Ronnie Moore was extensively questioned about what went on between he and the prosecutor. The trial attorney for Randolph was concerned that there might have been a missile violation. He sent his own investigator in to do a recorded interview. That's the 11-689 interview of Ronnie Moore. At that point, Ronnie Moore said, no, the prosecutor did not approach me. I sent a letter. I approached him. He says that multiple times in that interview. He explicitly denied. So Ronnie Moore changed his story after habeas counsel contacted him, right? Exactly. That's exactly. He says, no, no contact by the prosecutor in that 11-6 meeting. He testifies at trial. We approached the prosecutor. He is consistent throughout, in addition, that he describes two meetings, the first of which is the nice getting-to-know-him meeting, find out what he knew. He says, I talked to my lawyer. We approached them. We told them what I was prepared to talk to them. I told them what I knew. Well, would you agree if you'd lost down below, you'd have a tough rock to push uphill here? I would, yes. But I didn't lose below. Well, that's what I'm saying, though. Whoever lost below. Yes, absolutely. This is a harder appellate case. But this would be way easier. I mean, it's an easier appellate case and a harder factual case. But this would even be the evidence on the side of the August 24th meeting being the first contact between the prosecutor and the absence of a Messiah violation is supported by the great weight of the evidence that was presented. So we're not talking at all about close contact. You don't have to win on great weight to win. I do not. All you have to do is convince us that the trial court did not clearly err in its factual determination. I agree. I agree with that. But I'm just saying this isn't even one that comes close to the standard, to the edge of the standard. This is something entirely different. The only evidence is Moore's testimony. And that was heavily, as the magistrate found, that was heavily contradictory. Does the panel have any other questions? I don't believe so. Thank you. Thank you. We appreciate counsel's arguments, and the case is submitted. You've both been very helpful. We gave you a hard time, but you did a very good job, both of you. And with that, we stand adjourned. All rise.
judges: Graber, Callahan, Bea